Egan Jr., J.
Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered November 23, 2010, upon a verdict convicting defendant of the crimes of grand larceny in the fourth degree and fraudulent accosting.
On the afternoon of December 6, 2009, defendant was the front-seat passenger in a vehicle operated by her son, Kevin Gervasio; also present in the vehicle was defendant’s sister and Gervasio’s girlfriend. The quartet, some combination of whom had been drinking beer and/or smoking marihuana, proceeded to a supermarket in the Village of Menands, Albany County— ostensibly so that defendant’s sister could make a purchase. While there, defendant and Gervasio observed an 89-year-old woman (hereinafter the victim) pull in and park in the handicapped portion of the parking lot. The victim, who was there to purchase a newspaper, entered the store, whereupon Gervasio pulled alongside the victim’s car and spilled coffee underneath it — creating the appearance that fluid was leaking from the vehicle. Gervasio then repositioned his vehicle so that he and defendant were parked directly across from the victim’s car.
When the victim returned, defendant approached her and said, “I’m concerned because I think something is wrong with your car. There is oil underneath the engine.” After theorizing that the suspected problem could involve the brakes, defendant volunteered Gervasio’s services, stating, “My son is a mechanic and he’s over in the other end of the parking lot and he can come over and take a look.” The victim acquiesced and defendant signaled Gervasio, who — upon “inspecting” the victim’s vehicle — stated, “Oh, boy. Your master cylinders don’t look good. . . . You probably won’t have brakes.” When the victim indicated that she would take the vehicle to a nearby gas station for service, Gervasio replied, “They’re crooks. I used to work there. ... I can fix it.” The victim agreed to allow Gervasio to service her car, and he and defendant followed the victim home.
Upon arriving at the victim’s house, Gervasio purported to call around to local automotive stores in search of the parts needed to repair the vehicle. Once these calls were completed, Gervasio told the victim that he could fix her car but that he would need a down payment. The victim gave Gervasio all the cash she had on hand — approximately $375 — and gave defendant $20 just “because [she] liked her.” Gervasio and defendant then departed with the victim’s car. The following day, Gervasio called the victim and indicated that the car was fixed but that he would need an additional $1,000 to cover the cost of the *1154 repairs.[1] Gervasio and defendant then followed the victim to her bank and waited while she withdrew the requested funds. Ultimately, Gervasio received approximately $1,400 for “repairing” the victim’s vehicle.[2]
After the vehicle was returned to her, the victim noticed that one of the dashboard indicator lights, which had been on prior to her encounter with Gervasio and defendant, remained illuminated. The victim contacted Gervasio, who indicated that the fluids he had replaced needed to “work through” the vehicle and that the light should go off within 24 hours. When the light remained on, the victim took her vehicle to a local car dealership, where an inspection revealed fresh fluid on the vehicle frame but no evidence of any recent repairs.[3] After expending in excess of $1,000 for legitimate repairs to her vehicle, the victim contacted the police.
Defendant thereafter was indicted and charged with grand larceny in the fourth degree and fraudulent accosting. Following a jury trial, defendant was convicted as charged and sentenced, as a second felony offender, to 2 to 4 years in prison for the grand larceny conviction and one year for the fraudulent accosting conviction and was ordered to pay restitution. This appeal by defendant ensued.
We affirm. To the extent that defendant’s challenge to the legal sufficiency of the evidence is preserved for our review (see People v Brabant, 61 AD3d 1014, 1015 [2009], lv denied 12 NY3d 851 [2009]), we find it to be lacking in merit. Insofar as is relevant here, a person commits grand larceny in the fourth degree “when, with intent to deprive another of property or to appropriate the same to himself [or herself] or a third person” (Penal Law § 155.05 [1]), he or she steals property that is valued at more than $1,000 (see Penal Law § 155.30 [1]; People v Mallia, 52 AD3d 964, 965 [2008]; People v English, 138 AD2d 831, 831 [1988]). Additionally, “[a] person is guilty of fraudulent accosting when he [or she] accosts a person in a public place with intent to defraud him [or her] of money or other property by means of a trick, swindle or confidence game” (Penal Law § 165.30 [1]; see People v Bonaparte, 170 AD2d 688, 688 [1991]).
*1155 As a starting point, there is no question that the victim was deprived of property in excess of $1,000. Additionally, although Gervasio attempted to downplay defendant’s role in the charged crimes, he conceded on cross-examination that defendant “knew this was a fraudulent scheme.” While it is true that Gervasio’s testimony — standing alone — is insufficient to sustain defendant’s conviction (see CPL 60.22 [1]), defendant’s written statement to the police, which was read into evidence at trial, makes clear that she was both well aware of and actively participated in the scam perpetrated upon the victim. Indeed, defendant admitted that she saw Gervasio “pour[ ] coffee under the lady’s car,” that they then “waited for the lady to come out” of the supermarket and that, upon the victim’s return, she approached the victim and “told her that something was leaking under her car.” Additionally, as again evidenced by defendant’s statement and the trial testimony, there is no question that defendant accompanied Gervasio to the victim’s home and to the bank the following day, at which times the actual transfer of funds took place, and the fact that defendant may not have received any of the proceeds from the underlying scam neither negates her intent nor diminishes her role in defrauding the victim (see Penal Law § 155.05 [1]; People v Hill, 161 AD2d 478, 479 [1990]). Viewing this evidence in the light most favorable to the People, we are satisfied that “there is [a] valid line of reasoning and permissible inferences [that] could lead a rational person to the conclusion reached by the jury” (People v Bleakley, 69 NY2d 490, 495 [1987]; accord People v Mallia, 52 AD3d at 966)— namely, that defendant was guilty of grand larceny in the fourth degree and fraudulent accosting. Accordingly, we are satisfied that the jury’s verdict is supported by legally sufficient evidence.
Finally, we reject defendant’s assertion that County Court erred in denying her request to charge the jury as to the lesser included offense of petit larceny. For all the reasons previously discussed, we find that there is no reasonable view of the evidence that would support a finding that defendant committed the lesser offense of petit larceny but not the greater offense of grand larceny in the fourth degree (see People v Phoenix, 197 AD2d 755, 755-756 [1993], lv denied 82 NY2d 901 [1993]; see also People v Bowman, 79 AD3d 1368, 1369-1370 [2010], Iv denied 16 NY3d 828 [2011]; People v Lawrence, 277 AD2d 501, 502-503 [2000]). Defendant’s remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Lahtinen, J.P., McCarthy and Garry, JJ., concur. Ordered that the judgment is affirmed.

. Gervasio also indicated that the vehicle’s inspection was about to expire and requested an additional $25 to cover the cost of a new inspection sticker.

. According to defendant, she never received any of these proceeds, stating that Gervasio “was a cheap bastard and didn’t give her any money.”

. Although Gervasio, who was not an automotive mechanic, subsequently would testify that he did make certain repairs to the victim’s vehicle, he also readily admitted that he charged the victim for work he did not perform. More to the point, Gervasio acknowledged that he “scammed the [victim] out of money,” that such was his intent when he spilled his coffee underneath her vehicle and that he had executed similar scams several times before.